**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN A. ALBRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STARWOOD RETAIL PARTNERS, LLC, | ) | |
| STARWOOD CAPITAL GROUP HOLDINGS | ) | |
| GP, LLC, JEFF ZIEGLER, Individually and as an | ) | |
| agent of STARWOOD RETAIL PARTNERS, | ) | |
| LLC, | ) | Case No. 1:20-cv-04552 |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |
| | ) | |
| STARWOOD RETAIL PARTNERS, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JOHN A. ALBRIGHT, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**STARWOOD RETAIL PARTNERS, LLC'S ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant/Counter-Plaintiff Starwood Retail Partners, LLC ("SRP" or the "Company"), by and through its undersigned counsel, for its Answer and Affirmative Defenses to the Complaint of Plaintiff/Counter-Defendant John A. Albright ("Albright"), and for its Counterclaim against Albright, states as follows:

**SRP'S ANSWER AND AFFIRMATIVE DEFENSES**

SRP hereby submits the following Answer and Affirmative Defenses to Albright's Complaint:

1.      From April of 2015 through May of 2020, Albright served as a Vice President of Development at SRP.  Albright is domiciled in Fremont, Indiana and is a citizen of Indiana for purposes of establishing diversity jurisdiction.

**ANSWER:**     SRP admits the allegations in the first sentence of this paragraph.  SRP lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph and, on that basis, the allegations are deemed denied under Rule 8(b)(5), but SRP does not challenge diversity jurisdiction.

2.      SRP is a Delaware limited liability company with a principal place of business located at One East Wacker Drive, Suite 3600, Chicago, Illinois 60601. SRP's sole member is SCG-SRP Partners, LLC, a Delaware limited liability company. SCG-SRP Partners, LLC's sole member is Starwood Capital Group Holdings GP, LLC. Starwood Capital Group Holdings GP, LLC's sole member is BSS SCG GP Holdings, LLC. BSS SCG GP Holdings, LLC has one member, Barry Sternlicht, a citizen and resident of Florida. Therefore, none of SRP's members (or the members of its members) are citizens of Indiana for purposes of diversity jurisdiction.

**ANSWER:**     SRP admits that it is a limited liability company organized under the laws of the state of Delaware, which maintains its corporate headquarters at One East Wacker Drive, Suite 3600, in Chicago, Illinois.  SRP admits the allegations in the second sentence of this paragraph.  The remaining allegations of this paragraph are not directed at SRP, and therefore no answer is required of it; to the extent those allegations would be construed as directed at SRP, those allegations would be denied.

3.      SCG is a Delaware limited liability company with a principal place of business located in Miami, Florida. SCG's membership is as detailed in Paragraph 2. Like SRP, none of SCG's members or those of its members are citizens of Indiana. SCG is ultimately held by Barry

Sternlicht, a citizen and resident of Florida. None of SCG's members (or the members of its members) are citizens of Indiana for purposes of diversity jurisdiction.

**ANSWER:** The allegations of this paragraph are not directed to SRP, and therefore no answer is required from SRP. To the extent that these allegations are directed to SRP, SRP denies these allegations.

4. SRP publicly holds itself out as "a division" of SCG. In reality, SRP is an alter ego and business conduit of SCG. There is a near complete unity of interest and leadership between SRP and SCG. The officers of SRP - including its Chairman, Barry Stemlicht, its Vice Chairman and CFO, Jerome Silvey, its Senior Managing Director, Ellis F. Rinaldi, its CFO of the Funds, James Allen and its managing director, Nick Antonopoulos - are also officers of SCG. Officers and agents of SCG therefore comprise most of SRP's nerve center and dominate decision-making functions at SRP. SRP's corporate filings recite its principal office as: 1601 Washington Ave., Suite 800, Miami Beach, Florida 3319. This address is also the corporate address for SCG and SCG-SRP Partners, LLC. Upon information and belief, SRP is apparently inadequately capitalized and may be insolvent or nearly so. In fact, SRP advertises online: "we use our parent company's [SCG's] financial strength to make quick decisions about investing in... people." The section of SRP's website entitled "Our Story" ends with an invitation for readers to invest with SCG.[1] All SRP budgets are approved by SCG. More pointedly, as it relates to the allegations in this case, the terms of Albright's compensation were ultimately approved by officers at SCG. Although Albright was nominally employed by SRP and received his paychecks from SRP, it would promote unfairness and injustice under the circumstances if SCG were permitted to escape liability for SRP's wrongdoing. SCG is therefore properly joined as a defendant based upon an alter

---

[1] *See* http://starwood retail.com/learn-about-us/our-story

ego/business conduit theory and all allegations against SRP herein should be construed to also seek recovery from SCG. *See, e.g., Chatz v. World Wide Wagering, Inc.,* 413 F. Supp. 3d 742 (N.D.III.2019). Additionally, the facts pled herein - specifically regarding SCG's involvement in setting the terms of Albright's compensation - are sufficient to find SCG liable: (I) as a joint venturer of SRP; and (2) as Albright's "employer" as defined by the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 (the **"IWPCA"**).

**ANSWER:** The allegations of this paragraph fail to comport with Fed. R. Civ. P. 8(a), include statements that are directed at parties other than SRP, and constitute legal conclusions, to which no response is required. To the extent the allegations of this paragraph concern SRP, those allegations are denied.

5. At all relevant times, Ziegler served as SRP's Chief Operating Officer. Upon information and belief, Ziegler is domiciled in California and is a citizen of California for purposes of diversity jurisdiction.

**ANSWER:** SRP admits that Ziegler served as SRP's Chief Operating Officer, but denies that he served as Chief Operating Officer at all relevant times.

6. Federal diversity jurisdiction exists pursuant to 28 U.S.C. 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy five thousand dollars ($75,000.00).

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, but does not challenge diversity jurisdiction.

7. Venue in the District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions on which the claims are asserted herein occurred within this District.

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, but does not challenge diversity jurisdiction.

8. In late-October and early-November of 2017, SRP promised Albright an increased compensation and bonus package as an inducement for his continued employment with SRP. The terms of Albright's 2017 compensation were agreed to and unambiguously set out in the correspondence attached as **Exhibit A (the "Agreement").** As the Agreement makes clear, SRP promised that Albright's 2017 bonus would be earned based upon his own individual performance as reflected on his written annual performance review for 2017. Importantly, Albright's 2017 bonus was **not** to be based upon SRP's performance. While SRP may have failed to meet its expectations as a company in 2017, Albright exceeded his - *see* **Exhibit B, John A. Albright Performance Review** - justifying an earned bonus of 75% of his base salary (the **"75% Earned Bonus"**) under the Agreement. Nevertheless, SRP has used its own "bad year," "company struggles" and "missed benchmarks" as justification for its failure to provide Albright with the 75% Earned Bonus under the Agreement. SRP's failure to pay Albright's 75% Earned Bonus was in keeping with a pattern of over-promising and under-delivering to Albright dating back to 2015, when SRP first recruited Albright to join the company

**ANSWER:** SRP admits that the amount of, and eligibility for, any bonus compensation to Albright depended upon SRP's performance. SRP denies the remainder of the allegations in this paragraph.

9. Since its initial failure to pay Albright's 75% Earned Bonus, SRP has remained in backpedal mode, attempting to rewrite the Agreement, adding oftentimes inconsistent after-the-fact qualifications and conditions that were never previously communicated to Albright. SRP's failure to live up to its promises violates the terms of the parties' Agreement (Count I); the IWPCA (Count II); and gives rise to various other common law and equitable causes of action (Counts IV-Y). Ziegler is joined individually as a defendant for knowingly permitting SRP's violations of the IWPCA and by failing to pay Albright his 75% Earned Bonus owed under the Agreement (Count III). SCG is liable for SRP's wrongful conduct for the reasons outlined above in Paragraph 4.

**ANSWER:** Denied.

10. SRP is a management company involved in the business of acquiring, redeveloping, leasing, managing, marketing, operating and investing in a portfolio of 30 regional retail shopping centers. SRP was founded in 2012 and, at one time, managed various real estate assets with a value of well in excess of $5 billion.

**ANSWER**: SRP admits the allegations in this paragraph, except that it denies the allegation concerning the number of retail shopping centers in its portfolio.

11. In or about 2014, Albright was recruited to join SRP. By that time, Albright had developed a reputation as a well-respected real estate professional with a background in law and finance. He had more than 30 years of experience working in commercial real estate development, including for SRP's competitors. Prior to working for SRP, Albright served as the lead developer

on 5 of the United States' most valuable shopping centers. During its recruitment of Albright, SRP represented to him that SRP was likely to soon "go public" as a Real Estate Investment Trust **("REIT")** and that Albright would likely be provided equity in the company as part of his compensation arrangement with SRP.

**ANSWER:** Based on the information available to SRP, this allegation is denied.

12.  Albright worked at SRP as a Vice President of Development starting in April of 2015 with the reasonable expectation that SRP would be offered as a publicly-traded REIT and that he would be offered equity in the company, as promised when he was recruited to join the company. His duties included negotiating and drafting occupancy agreements with shopping center department stores/tenants, working with municipalities, diversifying shopping center occupancy by adding hotels/multi-family and other non-retail uses and generally implementing development strategies for retail real estate projects.

**ANSWER:** SRP admits Albright worked at SRP as a Vice President of Development starting in April 2015. SRP denies the remainder of the allegations in this paragraph.

13.  By the final quarter of 2016, however, it became apparent that SRP's statements about going public were not going to materialize. As a result, Albright began searching for new employment opportunities that would provide more favorable compensation and potential equity arrangements.

**ANSWER:** Denied.

14.  By February of 2017, SRP became aware that Albright was seeking employment elsewhere. Accordingly, SRP, through its duly authorized agent, Scott Wolstein **("Wolstein"),** SRP's then CEO, promised Albright, on February 21, 2017, that SRP would be providing Albright with equity in the company as an inducement for his remaining employed with SRP. Wolstein and

SRP's former COO, Scott Ball **("Ball"),** had made similar promises to Albright on numerous occasions before then, including when Albright was first recruited to join SRP.

      **ANSWER:** Denied.

      15.    In the Fall of 2017, Michael Glimcher **("Glimcher")** was named SRP's new CEO, replacing Wolstein. Glimcher and SRP were aware that Albright, a key member of SRP's Development Department, was actively seeking new employment. In late September of 2017, shortly after being named SRP's CEO, Glimcher - - and with the knowledge that Albright was considering leaving SRP - - assured Albright that SRP was "going to take care of him" since he was "a well-respected professional." Albright understood this to mean that SRP was going to increase his compensation as an inducement towards his continued employment with SRP.

      **ANSWER:** Denied.

      16.    SRP had an additional reason to induce Albright to remain with SRP at the time, as it had recently lost or was going to lose additional members of its Development Department imminently.

      **ANSWER:** Denied.

      17.    On October 27, 2017, in a follow-up to his conversation with Glimcher, Albright received a call from Carl Tash **("Tash"),** SRP's then acting Chief Operating Officer and Chief Strategy Officer. During this call, Tash informed Albright that: (1) Albright's salary would be increased to $275,000 retroactive to January 1, 2017; (2) Albright would receive an Earned Bonus of 50% of this increased base salary if his performance "met expectations" as reflected on his 2017 annual performance review; and (3) Albright would receive an Earned Bonus of 75% of his increased base salary if his performance "exceeded expectations" as reflected on his annual performance review. Tash put no other qualifications or conditions on this compensation

agreement and expressly told Albright that these figures had been approved by defendant SCG, which controlled these types of compensation decisions.

**ANSWER:** SRP admits only that Tash increased Albright's salary to $275,000 retroactive to January 1, 2017. SRP denies the remainder of the allegations in this paragraph.

18. The conversations with Tash and the agreed-upon terms of Albright's 2017 compensation were memorialized through a November l, 2017 e-mail communication from Angie Demchenko (**"Demchenko"),** SRP's then Head of Human Resources. The express purpose of this e-mail from Demchenko was "to confirm some details on compensation ... " following Albright's conversation with Tash. *See* **Exhibit A, the Agreement**.

**ANSWER:** SRP admits that Demchenko sent Albright an email on November 1, 2017. SRP denies Albright's characterization of Demchenko's email, and denies that the email "memorialized" "the agreed-upon terms of Albright's 2017 compensation." SRP denies that the email fully or accurately describes the agreed upon terms of Albright's 2017 compensation. SRP objects to Albright referring to Demchenko's email as "the Agreement." SRP denies that Demchenko's email was an agreement. SRP denies the remainder of the allegations in this paragraph.

19. Tash was carbon copied on the November 1, 2017 e-mail from Demchenko to Albright memorializing the Agreement. Tash never responded that the Agreement inaccurately or incompletely stated the agreed upon terms of Albright's 2017 compensation, as approved by SCG. Tash never withdrew or amended the Agreement.

**ANSWER:** SRP admits that Demchenko copied Tash on her email to Albright. SRP denies Albright's characterization of Demchenko's email, and denies that the email "memorialized" "the agreed-upon terms of Albright's 2017 compensation." SRP denies that the

email fully or accurately describes the agreed upon terms of Albright's 2017 compensation. SRP objects to Albright referring to Demchenko's email as "the Agreement." SRP denies that the email was an agreement. SRP denies that SCG ever approved Albright's compensation. SRP denies the remainder of the allegations in this paragraph.

20.     In reliance on the aforementioned promises, Albright remained devoted to his work with SRP and suspended his search for new employment.

**ANSWER:** SRP denies the existence of the "aforementioned promises," except that SRP admits it agreed to increase Albright's base salary to $275,000, retroactive to January 1, 2017. SRP lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of this paragraph and, on that basis, the allegations are deemed denied under Rule 8(b)(5).

21.     Through the duration of 2017, Albright was never told by Tash, Demchenko or anyone else that his increased salary and Earned Bonus structure for 2017 would be dependent or in any way contingent on SRP's 2017 financial performance or that of SRP's Development Department. To the contrary, it was represented to Albright that SRP had actually been liberal with bonus payments and pay raises to retain talent in light of SRP's overall financial struggles.

**ANSWER:** Denied.

22.     Albright did in fact receive a retroactive pay increase in November of 2017, as promised by SRP and memorialized in the Agreement, giving him assurance that SRP intended to honor the promises it made in the Agreement.

**ANSWER:** SRP admits that it provided Albright a retroactive pay increase in November 2017 (which it had approved in October 2017). SRP denies Albright's characterization of Demchenko's email, and denies that the email "memorialized" "the agreed-upon terms of

Albright's 2017 compensation." SRP denies that the email fully or accurately describes the agreed upon terms of Albright's 2017 compensation. SRP objects to Albright referring to Demchenko's email as "the Agreement." SRP denies that Demchenko's email was an agreement. SRP denies having provided Albright any assurance regarding his 2017 bonus, except the assurance that all SRP bonuses are contingent and discretionary. SRP denies the remainder of the allegations in this paragraph.

23. On February 6, 2018, Tash called Albright to inform him that he had done a great job in 2017 and was graded at a 4.0 "Exceeds Expectations" on his annual performance review. Tash further told Albright that this was the highest grade received by anyone in SRP's Development Department. However, Tash then advised that Albright would receive an Earned Bonus in the amount of 50% of his salary, plus an additional 3% to account for the fact that he would not be receiving an additional pay increase in 2018. Tash made no mention of the fact that SRP had promised Albright a 75% Earned Bonus just a few months earlier if he earned an "Exceeds Expectations" rating on his 2017 performance review. *See* **Exhibit A**.

**ANSWER:** SRP admits that Albright received a discretionary bonus of $145,750, which was equal to 53% of his $275,000 base salary. SRP denies that it ever promised Albright a 75% bonus, as all SRP bonuses are contingent and discretionary. SRP denies the remainder of the allegations in this paragraph.

24. Shortly after the February 6, 2018 call with Tash, Albright received his 2017 written performance review. This review confirmed that Albright's performance in 2017 "Exceeded Expectations" in relation to every goal set for him during the calendar year. A copy of Albright's 2017 written annual performance review is attached as **Exhibit B**.

**ANSWER:** SRP denies that Albright has accurately characterized the document attached to the Complaint as Exhibit B. SRP denies the remainder of the allegations in this paragraph.

25. On February 7, 2018, Albright met with Demchenko to discuss his annual performance review and the issues pertaining to his 2017 compensation. During this meeting, Demchenko provided a confusing explanation, telling Albright that he had achieved 106% of his "target bonus" because of his exceptional performance. This was the first time anyone from SRP used the phrase "target bonus" in relation to Albright's 2017 compensation. Albright then reminded Demchenko of the Agreement wherein SRP had promised to pay him a 75% Earned Bonus if he received a rating of "Exceeded Expectations" on his annual performance review. *See* **Exhibit A.** Albright further advised Demchenko that his "target bonus", if there were such a thing, should therefore have been in an amount of 75% of his base salary, totaling $60,500 more than what he actually received. During this meeting, Demchenko then claimed that the amount of Albright's bonus was actually based upon the fact that SRP's Development Department got "hit" on pay increases and bonuses, suggesting SRP had unilaterally decided that Albright's 2017 Earned Bonus was contingent on SRP's performance, not his own.

**ANSWER:** SRP admits that, based on the performance of SRP and Albright in 2017, Albright received a discretionary bonus of $145,750, which was equal to 53% of his $275,000 base salary, for a total 2017 compensation of $420,750. SRP denies the remainder of the allegations in this paragraph.

26. Over the next month, Albright continued to express concern that SRP had not paid him his agreed upon compensation for 2017. Demchenko wrote Albright again on February 27, 2018, claiming "decisions on compensation were made by the exec team factoring in firm, department and individual performance." That same day, Ziegler wrote Albright, claiming that

12

Albright's compensation was framed by "overall company struggles and missed benchmarks at every level." Again, Albright was never previously told that his 2017 Earned Bonus would be contingent on SRP's financial performance. Rather, Albright understood his increased compensation to have been an inducement towards his continued employment with SRP and consistent with Glimcher's and Wolstein's promises to "take care of" Albright, knowing that he was considering leaving the company.

**ANSWER:** SRP admits that Demchenko communicated to Albright, and further admits that, based on the performance of SRP and Albright in 2017, Albright received a discretionary bonus of $145,750, which was equal to 53% of his $275,000 base salary, for a total 2017 compensation of $420,750. SRP denies the remainder of the allegations in this paragraph.

27. When explaining the reasons for Albright's 2017 compensation and bonus, Demchenko and Ziegler never suggested that Albright had failed to meet any individual performance expectation, goals or criteria. To the contrary, Demchenko stated that Albright had demonstrated exceptional performance during the prior year.

**ANSWER:** Denied.

28. On March 6, 2018, Albright met with Ziegler to discuss the issues surrounding his 2017 compensation. Yet again, Ziegler stated that the reasons for Albright's compensation had to do with the company having an "overall bad year." During this discussion, Ziegler admitted that the Agreement did not state that Albright's compensation would be in any way contingent on company performance but claimed that it "should have" been.

**ANSWER:** SRP admits that Zeigler communicated with Albright, and further admits that based on the performance of SRP and Albright in 2017, Albright received a discretionary bonus

of $145,750, which was equal to 53% of his $275,000 base salary, for a total 2017 compensation of $420,750. SRP denies the remainder of the allegations in this paragraph.

29.     The type of contingent bonus imagined by Ziegler and Demchenko would not make sense under the circumstances. During his March 6, 2018 meeting with Ziegler, Albright responded that, by the time he negotiated his increased compensation for 2017 (which occurred in late-October and early-November, more than 3/4 of the way through the year), SRP's financial projections and outlook for the remainder of the year were clear. Ziegler agreed. This admission by Ziegler confirms SRP's backtrack and the inherent inconsistency in its position. Either SRP promised a 75% Earned Bonus that could never be achieved in light of SRP's clear, known financial woes (simply to keep Albright with the company) or the bonus structure was intended to be just as it was written, based upon Albright's performance, not SRP's.

**ANSWER:**  SRP admits that, based on the performance of SRP and Albright in 2017, Albright received a discretionary bonus of $145,750, which was equal to 53% of his $275,000 base salary, for a total 2017 compensation of $420,750.  SRP denies the remainder of the allegations in this paragraph.

30.     On March 9, 2018, Albright had a follow-up conversation with Tash regarding SRP's failure to pay him the 75% Earned Bonus. During this conversation, Tash reversed course, flatly contradicting the prior excuses repeated by Demchenko and Ziegler. During this conversation, Tash stated that he did *not* intend for Albright's 75% Earned Bonus to be contingent on company performance. Rather, Tash claimed for the first time that the standard for receiving the 75% Earned Bonus was wholly discretionary and required Albright to not only "exceed expectations" but also to demonstrate "exceptional performance" during the year.

**ANSWER:** SRP admits that Albright and Tash had a conversation on March 9, 2018 concerning Albright's 2017 bonus. SRP admits that Tash reminded Albright that SRP bonuses are wholly discretionary. SRP denies the remainder of the allegations in this paragraph.

31. Tash's claim makes no sense. There was not and had never been an "exceptional performance" metric on SRP's annual employee performance reviews. Indeed, that term is not defined, utilized or referenced anywhere in SRP's formal performance review process.

**ANSWER:** Denied.

32. Tash never explained to Albright how he could have "exceeded expectations" through anything less than exceptional performance. There had never previously been any suggestion Albright's performance during 2017 was anything but exceptional.

**ANSWER:** Denied.

33. Tash's claim was nothing more than an attempt to rewrite the Agreement and to circumvent SRP's obligation to pay Albright the 75% Earned Bonus as promised. This March 9, 2018 conversation was the first time anyone at SRP had ever claimed that Albright did not somehow meet the individual performance standard required for the 75% Earned Bonus.

**ANSWER:** SRP denies that the November 1, 2017 email from Demchenko to Albright fully or accurately describes the agreed upon terms of Albright's 2017 compensation. SRP objects to Albright referring to Demchenko's email as "the Agreement." SRP denies that Demchenko's email was an agreement. SRP denies the remainder of the allegations in this paragraph.

34. In mid-March 2018, after receiving conflicting explanations from Tash, Demchenko and Ziegler, Albright asked Ziegler if he should escalate his dispute to Glimcher, SRP's new CEO. They both told Albright that would not be advisable. Albright followed their

advice for fear of retaliation and did not raise the issue with Glimcher; but, at no point did he ever waive his claim to the 75% Earned Bonus.

**ANSWER:** Denied.

35.     At all times alleged above, Ziegler, Demchenko, Tash, Wolstein, Ball and Glimcher were acting as duly authorized agents, officers and representatives of SRP. Each of them were acting within the scope of their authority to negotiate Albright's compensation, to communicate essential terms about his compensation and to evaluate Albright's performance with SRP.

**ANSWER:**   SRP admits that Ziegler, Tash, Demchenko and Glimcher had input into Albright's 2017 bonus.  SRP denies the remainder of the allegations in this paragraph.

36.     Starting in early December of 2017, Ziegler, in his role as SRP's COO, had the authority to determine whether to distribute earned bonuses to SRP's employees and it was Ziegler who ultimately made the decision to pay Albright a bonus less than the 75% Earned Bonus to which SRP had previously agreed.

**ANSWER:**   SRP admits that in December 2017, Ziegler was SRP's COO and had some input into employee bonuses.  SRP denies the remainder of the allegations in this paragraph.

37.     SRP terminated Albright's employment as of June 5, 2020.

**ANSWER:** Admitted.

### COUNT I
### Breach of Contract by SRP and SCG

38.     Paragraphs 1 through 37 are adopted and incorporated as and for paragraphs 1 through 38 of Count I.

**ANSWER:**   SRP incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint.

39.     At all relevant times, the November 1, 2017 correspondence (**Exhibit A**) reflected the terms of a valid and enforceable contract setting forth the terms of Albright's 2017 compensation with SRP (the **"Agreement"**).

**ANSWER:**  Denied.

40.     Albright substantially performed all of his material obligations under the terms of the Agreement and, in fact, exceeded expectations in his performance as a Vice President of Development for SRP in 2017.

**ANSWER:**  Denied.

41.     SRP breached the Agreement by failing to pay Albright the 75% Earned Bonus for 2017, despite the fact that he "Exceeded Expectations" for each of his goals during the year and otherwise met all required performance criteria in 2017.

**ANSWER:**  Denied.

42.     SRP breached the Agreement by unilaterally imposing additional criteria and insisting that Albright's 75% Earned Bonus was subject to various "company performance" and/or "department performance" qualifications or conditions that were never previously communicated to Albright and were not a part of the Agreement.

**ANSWER:**  Denied.

43.     SRP breached the Agreement by unilaterally insisting that Albright's 75% Earned Bonus for 2017 was subject to an "exceptional performance" criteria, a phrase that is not defined, used or referenced anywhere in SRP's annual performance metrics, employment manuals or review forms.

**ANSWER:**  Denied.

44.     As a result of SRP's breach of the Agreement as recited in this Count and in the foregoing paragraphs, Albright has been injured and sustained damages in excess of $75,000.

**ANSWER:**  Denied.

45.     Albright is entitled to pre-judgment interest under Section 2 of the Interest Act, 815 ILCS 205/.01, et seq. at 815 ILCS 205/2.

**ANSWER:**  Denied.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

    A.  Dismissing Albright's Complaint in its entirety, including all claims asserted in Count I of Albright's Complaint, *with prejudice*;

    B.  Denying all relief sought by Albright in his Complaint;

    C.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

    D.  Awarding to SRP any such other and further relief as the Court deems just.

## COUNT II
### Violation of the Illinois Wage Payment and Collection Act by SRP and SCG

46.     Paragraphs l through 37 are adopted and incorporated as and for paragraphs through 45 of Count II.

**ANSWER:**  SRP incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint.

47.     At all relevant times hereto, there was in force and effect in Illinois a statute entitled the Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (the **"IWPCA"**).

**ANSWER:** SRP admits that the IWPCA was in full force and effect from 2015 to the present, but denies that the IWPCA applies here.

48. SRP is an employer within the meaning of Section 2 of the IWPCA.

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP denies the allegations of this paragraph.

49. SCG is also an employer within the meaning of Section 2 of the IWPCA inasmuch as it approved the terms of Albright's compensation and was, at a minimum, "indirectly" responsible for payment of Albright's wages. *See* 820 ILCS 115/2.

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP denies the allegations of this paragraph.

50. Albright is an employee within the meaning of Section 2 of the IWPCA.

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP denies the allegations of this paragraph.

51. The Earned Bonus in the amount of 75% of Albright's 2017 base salary, as promised to Albright for "exceeding expectations" constitutes "wages" under Section 2 of the IWPCA.

**ANSWER:** Denied.

52. Section 5 of the IWPCA provides, among other things, that final compensation is due from an employer to a separated employee at the time of separation, if possible, but in no event later than the next pay day.

**ANSWER:** The allegations of this paragraph state a legal conclusion to which no answer is required. To the extent the allegations can be deemed allegations of fact such that an answer is required, SRP denies the allegations of this paragraph.

53. SRP and SCG's failure to pay Albright the 75% Earned Bonus was and is a violation of the IWPCA.

**ANSWER:** Denied.

54. SRP and SCG's failure to pay Albright all final compensation due at the time of his separation from SRP on June 5, 2020, was and is a violation of the IWPCA.

**ANSWER:** SRP denies that it (or SCG) failed to pay Albright any compensation owing to him. SRP denies the remainder of the allegations in this paragraph.

55. Albright is entitled to pre-judgment interest under Section 2 of the Interest Act, 815 ILCS 205/.01 et seq. at 815 ICLS 205/2.

**ANSWER:** Denied.

56. Albright is entitled to attorneys' fees by authority of the Attorneys' Fees and Wage Actions Act, 705 ILCS 225/.01 et seq. The filing of this action was preceded by the making of a written demand by Albright to SRP, in February of 2017, within the meaning of 705 ILCS 225/1, and more recently by his counsel on June 10, 2020.

**ANSWER:** Denied.

57. Albright is also entitled to reasonable attorneys' fees and additional damages in the amount of two percent (2%) of the amount of unpaid wages for each and every month SRP and SCG has failed to pay his 75% Earned Bonus, starting in January of 2018, under Section 14 of the IWPCA, 820 ILCS 115/14.

**ANSWER:** Denied.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

    A.   Dismissing Albright's Complaint in its entirety, including all claims asserted in Count II of Albright's Complaint, *with prejudice*;

    B.   Denying all relief sought by Albright in his Complaint;

    C.   Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

    D.   Awarding to SRP any such other and further relief as the Court deems just.

## COUNT III
### Violation of the Illinois Wage Payment and Collection Act by Ziegler

58.    Paragraphs 1 through 37 are adopted and incorporated as and for paragraphs through 57 of Count III.

**ANSWER:** Because Albright asserts the allegations in this paragraph solely against Ziegler, SRP does not need to provide any answer to the allegations in this paragraph. To the extent an answer is required, SRP incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint.

59.    Ziegler was an officer and agent of SRP, an employer under the IWPCA.

**ANSWER:** Because Albright asserts the allegations in this paragraph solely against Ziegler, SRP does not need to provide any answer to the allegations in this paragraph. To the extent an answer is required, SRP admits that Ziegler was an officer of SRP, and denies the remainder of the allegations in this paragraph.

60.    Ziegler failed and refused to pay Albright the 75% Earned Bonus he was entitled to under the Agreement in violation of the IWPCA.

**ANSWER:** Because Albright asserts the allegations in this paragraph solely against Ziegler, SRP does not need to provide any answer to the allegations in this paragraph. To the extent an answer is required, SRP denies the allegations in this paragraph.

61. Ziegler further violated the IWPCA by imposing additional qualifications and conditions on Albright's 2017 compensation that were inconsistent with the terms of the Agreement.

**ANSWER:** Because Albright asserts the allegations in this paragraph solely against Ziegler, SRP does not need to provide any answer to the allegations in this paragraph. To the extent an answer is required, SRP denies the allegations in this paragraph.

62. Through his actions, Ziegler knowingly permitted SRP to violate the provisions of the IWPCA, and as such, he is an employer of Albright within the meaning of Section 13 of the IWPCA, and is personally liable to Albright for his unpaid wages outlined herein.

**ANSWER:** Because Albright asserts the allegations in this paragraph solely against Ziegler, SRP does not need to provide any answer to the allegations in this paragraph. To the extent an answer is required, SRP denies the allegations in this paragraph.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

A. Dismissing Albright's Complaint in its entirety, including all claims asserted in Count III of Albright's Complaint, *with prejudice*;

B. Denying all relief sought by Albright in his Complaint;

C. Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

D. Awarding to SRP any such other and further relief as the Court deems just.

## COUNT IV
### Promissory Estoppel

63.     Paragraphs 1 through 37 are adopted and incorporated as and for paragraphs

through 63 of Count V.

**ANSWER:**  SRP incorporates by reference its answers to Paragraphs 1 through 37 of the

Complaint.

64.     SRP, through its duly authorized agents and representatives, repeatedly and

unambiguously promised Albright equity in SRP and a 75% Earned Bonus for 2017 if his

performance exceeded expectations.

**ANSWER:**  Denied.

65.     Albright relied on SRP's promises by joining SRP and remaining with SRP rather

than pursuing more lucrative employment opportunities elsewhere.

**ANSWER:**  Denied.

66.     Albright's reliance was reasonable and foreseeable to SRP since SRP knew that

Albright was considering leaving SRP and was induced to stay after being promised additional

compensation.

**ANSWER:**  Denied.

67.     Albright has been damaged as a result of his reliance on SRP's promises. He did

not receive the 75% Earned Bonus promised to him and remained employed with SRP, declining

to pursue other, more lucrative employment opportunities.

**ANSWER:**  Denied.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners,

LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the

Plaintiff, John A. Albright ("Albright"), and enter an Order:

A.  Dismissing Albright's Complaint in its entirety, including all claims asserted in Count IV of Albright's Complaint, *with prejudice*;

B.  Denying all relief sought by Albright in his Complaint;

C.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to SRP any such other and further relief as the Court deems just.


## COUNT V
### Unjust Enrichment

68.  Paragraphs 1 through 37 are adopted and incorporated as and for paragraphs 1 through 67 of Count VI.

**ANSWER:**  SRP incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint.

69.  SRP has been unjustly enriched through its failure to pay Albright his 75% Earned Bonus and through continued services rendered by Albright in reliance on SRP's false promises about increased compensation.

**ANSWER:**  Denied.

70.  SRP's retention of these benefits would violate fundamental principles of justice, equity and good conscience.

**ANSWER:**  Denied.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

A.  Dismissing Albright's Complaint in its entirety, including all claims asserted in Count V of Albright's Complaint, *with prejudice*;

24

B.  Denying all relief sought by Albright in his Complaint;

C.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to SRP any such other and further relief as the Court deems just.

## **GENERAL DENIAL**

SRP has endeavored to address all of the allegations directed at it in the Complaint.  To the extent SRP has not specifically mentioned or directly responded to any of Albright's allegations, SRP respectfully denies those allegations.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

A.  Dismissing Albright's Complaint in its entirety, *with prejudice*;

B.  Denying all relief sought by Albright in his Complaint;

C.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to SRP any such other and further relief as the Court deems just.

## **AFFIRMATIVE DEFENSES**

Defendant Starwood Retail Partners, LLC ("SRP"), in addition to the affirmative matters set forth in its Answer (*supra*), and incorporating by reference the allegations of fact set forth in Paragraphs 1 through 62 of SRP's Counterclaim (*infra*), respectfully asserts the following affirmative defenses to the Complaint filed by Plaintiff John A. Albright ("Albright"):

### AFFIRMATIVE DEFENSE NO. 1
### FAILURE TO STATE A CLAIM

Albright's Complaint should be dismissed, in whole or in part, because he has failed to state a claim upon which relief may be granted.

### AFFIRMATIVE DEFENSE NO. 2
### FAILURE OF CONSIDERATION

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, because he failed to provide SRP proper consideration for entering into any contracts.

### AFFIRMATIVE DEFENSE NO. 3
### BREACH OF REPRESENTATIONS AND WARRANTIES

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, because Albright breached the representations and warranties in any contract with SRP.

### AFFIRMATIVE DEFENSE NO. 4
### FAILURE TO SATISFY CONDITION PRECEDENT

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, because Albright failed to satisfy the conditions precedent of any contract with SRP.

### AFFIRMATIVE DEFENSE NO. 5
### FULL PERFORMANCE / NO BREACH

Albright is barred from recovering any damages because SRP fully performed under each of its contracts with Albright, and SRP did not breach any contracts with Albright.

### AFFIRMATIVE DEFENSE NO. 6
### RESCISSION

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, because SRP is entitled to rescind any contracts with Albright due to his having fraudulently induced SRP to enter into the contracts.

### AFFIRMATIVE DEFENSE NO. 7
### AGREEMENT VOIDABLE OR INVALID

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, because any contracts at issue are voidable or invalid.

### AFFIRMATIVE DEFENSE NO. 8
### FIRST BREACH

Albright is barred from recovering any damages, and any failure of performance by SRP is excused, pursuant to the doctrine of first breach.

### AFFIRMATIVE DEFENSE NO. 9
### ADEQUATE REMEDY AT LAW

Albright's equitable claims are barred to the extent he has an adequate remedy at law.

### AFFIRMATIVE DEFENSE NO. 10
### EXISTENCE OF EXPRESS CONTRACT

Albright's equitable claims are barred to the extent an express contract governed the acts at issue.

### AFFIRMATIVE DEFENSE NO. 11
### NO DUTY

Albright's equitable claims are barred because SRP owed no duty to Albright the alleged breach of which could serve as the basis for an equitable claim in this lawsuit.

### AFFIRMATIVE DEFENSE NO. 12
### LACK OF INEQUITABLE CONDUCT

Albright's equitable claims are barred because SRP did not act inequitably towards Albright.

### AFFIRMATIVE DEFENSE NO. 13
### UNCLEAN HANDS

Albright, pursuant to the doctrine of unclean hands, is barred from recovering any damages.

## AFFIRMATIVE DEFENSE NO. 14
### SET OFF

To the extent Albright suffered any damages proximately caused by SRP (and he did not), then the amount of those damages may only be applied as set-off against the far greater sums of money that Albright owes to SRP because of the conduct set forth in SRP's Counterclaim, *infra*.

## AFFIRMATIVE DEFENSE NO. 15
### PROMISSORY AND EQUITABLE ESTOPPEL

In initially employing Albright, and later continuing to employ him, SRP relied on Albright's several assurances that he agreed SRP's bonuses were discretionary and contingent. Albright is thus precluded, under the doctrines of promissory and equitable estoppel, from pursuing claims against SRP based upon any theory that SRP's bonuses are not discretionary and contingent.

## AFFIRMATIVE DEFENSE NO. 16
### FAILURE TO MITIGATE

Albright has failed to mitigate any damages he purportedly sustained as a result of the conduct alleged in the Complaint.

## AFFIRMATIVE DEFENSE NO. 17
### NO DAMAGES

Albright has suffered no damages or injury whatsoever as a result of SRP's alleged conduct.

## AFFIRMATIVE DEFENSE NO. 18
### WAIVER

Albright's claims are barred by the doctrine of waiver, as he waived any and all 2017 bonus claims in October 2017 and in March 2018.

## AFFIRMATIVE DEFENSE NO. 19
### RELEASE

Albright's claims are barred by the doctrine of release, as he released any and all 2017 bonus claims in October 2017 and in March 2018.

### AFFIRMATIVE DEFENSE NO. 20
#### LACHES

Albright's claims are barred by the doctrine of laches, as Albright's unreasonable delay in asserting his 2017 bonus claim caused SRP to pursue a course it would not have otherwise taken.

### AFFIRMATIVE DEFENSE NO. 21
#### THE 2017 BONUS WAS NOT EARNED

Albright's wage claims are barred because there was no unequivocal promise by SRP to pay him a 2017 bonus; no bonus might have been paid in any particular year (including 2017); all SRP bonuses are based, in part on firm performance; all the requirements to obtain a bonus were not met; Albright is no longer eligible for a bonus because he is no longer on SRP's payroll; and the 2017 bonus was not "earned."

### AFFIRMATIVE DEFENSE NO. 22
#### ATTORNEYS' FEES NOT RECOVERABLE

Albright is not entitled to attorneys' fees under 705 ILCS 225/.01, *et seq*., because the alleged written demand did not comply with 705 ILCS 225/1, and 705 ILCS 225/.01, *et seq*., does not apply here. Albright is not entitled to attorneys' fees for any other reason.

### AFFIRMATIVE DEFENSE NO. 23
#### NONRESIDENT OF ILLINOIS

Albright is not entitled to a judgment under the Illinois Wage Payment and Collection Act because he is not a resident of Illinois and, on information and belief, was not a resident of Illinois at any time during his employment with SRP.

### AFFIRMATIVE DEFENSE NO. 24
#### IMPROPER FORUM

Albright, under 820 ILCS 115/11, is not entitled to file an action for alleged violation of the Illinois Wage Payment and Collection Act in federal court.

## RESERVATION OF AFFIRMATIVE DEFENSES

Albright expressly reserves his rights to assert any additional defenses as they become known or available during the pendency of this matter.

## JURY DEMAND

SRP hereby demands a jury trial on all matters alleged in Albright's Complaint.

WHEREFORE, for all of the reasons set forth above, Defendant Starwood Retail Partners, LLC ("SRP"), respectfully requests that this Court enter judgment in its favor and against the Plaintiff, John A. Albright ("Albright"), and enter an Order:

    A.  Dismissing Albright's Complaint in its entirety, *with prejudice*;

    B.  Denying all relief sought by Albright in his Complaint;

    C.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this action; and

    D.  Awarding to SRP any such other and further relief as the Court deems just.

## COUNTERCLAIMS

Counter-Plaintiff Starwood Retail Partners, LLC ("SRP" or the "Company")), by and through its undersigned counsel, for its Counterclaims against Counter-Defendant John A. Albright ("Albright"), alleges as follows:

### PRELIMINARY STATEMENT

1.      In 2017, SRP – Albright's former employer – awarded Albright a discretionary bonus of $145,750, equal to 53% of his $275,000 base salary based on individual ***and*** Company performance.

2.      In truth, Albright was not "entitled" to any bonus from the Company. All SRP bonuses are discretionary and contingent, and based on individual and firm performance. Thus,

no matter how well an employee of SRP might perform and no matter how well SRP itself might perform, SRP is entitled to award any bonus it sees fit, or no bonus at all.

3.      Albright himself understood and repeatedly agreed that any SRP bonuses would be discretionary and contingent.  These agreements, however, comprised a pattern of knowingly and materially false promises and representations that Albright made to SRP over the course of several years for his personal gain.

4.      For instance, to convince SRP to employ him, Albright signed a March 17, 2015 offer letter that expressly provided that all bonuses during his employment would be discretionary and contingent.

5.      Similarly, in October 2017, as part of a ploy to have SRP retroactively increase his earlier compensation, Albright re-acknowledged the terms of that offer letter, and again agreed that all SRP bonuses are discretionary and contingent.

6.      In February 2018, SRP awarded Albright a generous bonus equal to 53% of his base salary, despite the fact that SRP had had a difficult year, and despite that Albright's 2017 performance was only slightly above average.  Nevertheless, Albright was unhappy with his $145,750 bonus – even though it made him one of the highest paid employees in Company history.

7.      After receiving his $145,750 bonus payment, Albright argued that he was *entitled* to more bonus compensation – specifically, to a 2017 bonus payment equal to 75% of his base salary.  By claiming entitlement to any bonus, Albright was taking a position directly contrary to his 2015 offer letter acknowledgement, and directly contrary to the representations he made to SRP senior management five months prior, in October 2017.

8.      When Albright raised this issue with SRP senior management during meetings in February and March 2018, they reminded him that SRP's bonuses were discretionary and

contingent, and based on individual and firm performance – a fact he clearly understood and to which he readily agreed.  Accordingly, SRP refused to increase Albright's 2017 bonus, and, in fact, considered terminating Albright's employment based on his unscrupulous conduct.

9.     Perhaps recognizing that he had gone too far, Albright responded by assuring SRP's senior management that he was "committed to SRP" and that the dispute over his 2017 bonus was fully resolved.  Based upon Albright's representations, SRP agreed to continue his employment with the Company.

10.     For the next two years, until his June 5, 2020 termination (as part of a reduction in force), SRP continued to pay Albright hundreds of thousands of dollars per year in salary and bonuses.  Indeed, during his last year of employment, he was the sixth highest-paid SRP employee, out of nearly 400 employees.

11.     After Albright's termination, SRP learned that Albright's agreements and representations about the discretionary and contingent nature of SRP's bonuses – and the resolution of his 2017 bonus dispute – were false.

12.     On August 3, 2020, Albright sued SRP in this action to recover an allegedly unpaid 2017 bonus, which he did not earn and to which he is not entitled.

13.     In this action, SRP asserts counterclaims against Albright arising out of his pattern of duplicity towards SRP.  Specifically, SRP asserts below counterclaims for promissory fraud (Count I), promissory estoppel (Count II), fraudulent inducement (Count III), breach of fiduciary duty (Count IV), breach of contract (Count V), and unjust enrichment (Count VI).

## THE PARTIES

14.     SRP is a commercial real estate company specializing in the development, management, and leasing of retail property in shopping malls and lifestyle centers across the U.S.

32

15. SRP's headquarters are located in Chicago, Illinois.

16. Albright is a former Vice President of Development for SRP. Based upon information and belief, Albright is an attorney, licensed to practice law by the state of Nebraska, and has been a member of that state's bar since 1985.

17. Based upon information and belief, from 2015 to the present, Albright has been a resident of Indiana.

<u>JURISDICTION</u>

18. SRP's counterclaims are compulsory counterclaims under Federal Rule of Civil Procedure 13(a)(1) because they arise out of the transaction or occurrence that is the subject matter of Albright's Complaint, and they do not require adding another party over whom the Court cannot acquire jurisdiction.

<u>FACTUAL BACKGROUND</u>

A. <u>SRP's Offer of Employment</u>

19. On March 17, 2015, Albright received a written offer of employment from SRP's Vice President of Human Resources, Megan Van Pelt, for the full-time position of "VP of Development" at "Starwood Retail Partners, LLC." A true and correct copy of this offer letter, signed by Albright, is attached hereto as **Exhibit A**.

20. The March 17, 2015 offer letter provided important limitations on, and minimum requirements for receiving, bonuses from SRP. The offer letter stated, for instance, that:

- Albright would be eligible to receive "discretionary incentive compensation bonus[es]" from SRP on a contingent basis;

- "Any bonus paid to [Albright] will be based on, among other things, individual and firm performance, and will be determined in the Company's sole discretion….";

- "Bonuses are considered 'earned' on the date that they are paid …, and [Albright] must be a full-time employee in good standing with the Company on the date any bonus is paid."; and

- The maximum possible bonus "is 75% of base salary."

21.     Albright signed the March 17, 2015 offer letter and accepted the job of Vice President of Development at SRP, starting April 19, 2015.

22.     By signing the March 17, 2015 offer letter and joining SRP, Albright represented that he agreed all SRP bonuses would be discretionary and contingent.  He also implicitly represented that he would not sue SRP on the basis of any allegedly unpaid bonus.

23.     In fact, these representations were knowingly false.  At all times, unbeknownst to SRP, (i) Albright intended to take the position that SRP's bonuses are not contingent and not discretionary, and (ii) he intended to sue SRP if it did not provide him with the maximum possible annual "bonus" payments, even if he had not earned them.

24.     SRP reasonably relied on its belief in the truth of Albright's representations.  Had SRP known that Albright did not actually agree that SRP's bonuses were discretionary and contingent, or that Albright intended to sue SRP if it did not award him the maximum possible annual "bonus" amounts (regardless of "individual and firm performance"), then it never would have employed him.

25.     This was the beginning of Albright's pattern of making knowingly and materially false promises and representations to SRP for his personal benefit and to the detriment of the Company.

26.     In April 2015, Albright began working at SRP as one of its highest-paid employees. By virtue of his role as an officer of SRP, Albright owed the Company heightened duties of good faith, loyalty, and candor.

**B.** **The October 2017 Dispute Over Earlier Pay**

27.     In October 2017, Albright manufactured a "misunderstanding" about the nature of his compensation with SRP.

28.     In an October 27, 2017 conversation with Carl Tash (then SRP's Chief Strategy Officer), Albright falsely claimed that he was entitled to a larger 2016 bonus, and a higher 2017 salary, than SRP had paid him, notwithstanding his offer letter.

29.     In truth, however, Albright had always understood (i) that his offer letter governed the terms of his compensation, (ii) that all SRP bonuses are contingent and discretionary, and (iii) that he was not entitled to a larger 2016 bonus or a higher 2017 salary.

30.     During this conversation, Tash told Albright that he should never expect a bonus from SRP unless he "exceeds expectations via exceptional performance" and goes "above and beyond" expectations.  This was not to say, however, that Albright *would* obtain any bonus for such performance; on the contrary, Tash reminded Albright (i) that no matter Albright's individual performance or SRP's overall firm performance, all SRP bonuses are discretionary and contingent, and (ii) that Albright had signed an offer letter agreeing to that.

31.     Despite that Albright was not entitled to any retroactive compensation increase, SRP agreed, on October 27, 2017, to retroactively increase his 2016 compensation, and his 2017 base salary (to $275,000).

32.     SRP agreed to this retroactive compensation increase in reliance on the representations that Albright made during his October 27, 2017 conversation with Tash.  During that conversation, Albright (i) re-acknowledged the terms of the 2015 offer letter he had signed; (ii) represented to Tash that, based on Tash's explanation to him, Albright understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are

discretionary and contingent – applied to all bonuses, including his then-upcoming 2017 bonus; and (iii) represented that he would never again take the position that SRP bonuses are not discretionary and contingent, or the position that he is entitled to any bonus whatsoever.

33. Albright's representations, however, were knowingly false. Unbeknownst to SRP, (i) Albright did not actually agree that SRP's bonuses were discretionary and contingent, and (ii) he intended to sue SRP if it did not award him the maximum possible annual bonus, based on the false idea that his bonus was somehow guaranteed.

34. Albright made these misrepresentations to induce SRP to (i) retroactively increase his 2016 bonus and 2017 salary, and (ii) continue employing him and paying him hundreds of thousands of dollars per year.

35. SRP reasonably relied on its belief in the truth of Albright's representations. Had SRP known that Albright did not actually agree that SRP's bonuses were discretionary and contingent, or that Albright intended to sue SRP if it did not award him a large enough bonus, then SRP would not have retroactively increased Albright's compensation by any amount, and it would not have continued employing Albright.

36. On November 1, 2017, Albright received an e-mail message from Angie Demchenko (then SRP's Vice President of Human Resources), confirming several of the details from Albright's October 27, 2017 conversation with Tash. Demchenko confirmed, for instance, that Tash had told Albright that he could expect his 2017 bonus to be in "the range of 50-75% of [his] base salary for the year; 50% will be for 'meeting expectations' and 75% will be for 'exceeding expectations via exceptional performance.'" A true and correct copy of this email is attached hereto as **Exhibit B**.

37.     Demchenko's November 1, 2017 email also very clearly stated that Albright's bonus compensation: (a) would at all times be contingent, as he would have received no bonus if his performance fell below a "meeting expectations" threshold; (b) would at all times be discretionary, as his bonus was dependent upon SRP's expectations and its subjective evaluation of his (and the Company's) comparative and qualitative performance; and (c) if awarded at all, would be in a discretionary <u>range</u> of 50-75% of his base salary.

###     C.     **Albright's 2017 Performance and Bonus**

38.     On November 27, 2017, Demchenko sent Albright an email describing several of SRP's performance ratings.

39.     At the end of 2017, Albright completed a performance evaluation for himself.  In several categories, he scored himself a 4.0 out of a possible 5.0.  In other words, Albright admitted that his performance was only 80% as good as it could have been – the equivalent of a "B minus" performance.

40.     In one category on his self-evaluation, Albright rated his performance a 3.0 out of a possible 5.0, meaning that he merely "Met Expectations."  This corresponds to 60% of the maximum, or, at best, a "D-minus" performance.

41.     In other words, Albright admitted that his work in 2017 was not exemplary and that it did not completely "exceed expectations" (let alone exceed expectations via ***exceptional performance***).

42.     In truth, Albright's 2017 performance was slightly above average, but not exemplary.  He did not "exceed expectations via exceptional performance," and he did not go "above and beyond."

43.     In 2017, the company-wide "firm performance" of SRP was far below expectations.

44.    In early February 2018, SRP awarded Albright his 2017 bonus: a discretionary bonus of $145,750, which was equal to 53% of his $275,000 base salary (for a total 2017 compensation of $420,750).  SRP based this bonus award in part on the underwhelming performance of both Albright and the Company in 2017.

45.    Albright's 53% bonus was clearly within "the range of 50-75% of [his] base salary" that Tash, in October 2017, had told Albright he could likely expect to receive.

### D.    The March 2018 Dispute Over Albright's 2017 Bonus

46.    Albright was not happy with receiving a bonus of $145,750, because it was "only" 53% of his $275,000 base salary.  In February 2018, he began seeking an increase of his 2017 bonus from 53% (or $145,750) to 75% (or $206,250) of his base salary.

47.    Despite having represented to SRP in 2015 and 2017 that he agreed all SRP bonuses were discretionary and contingent, Albright began complaining that he was *entitled* to receive a "75% bonus" instead of a "53% bonus."

48.    Albright based his bonus "entitlement" theory on Demchenko's November 1, 2017 email, which noted that a minimum requirement for obtaining a 75% bonus is "exceeding expectations via exceptional performance," and his self-evaluation.

49.    Albright's theory had, and has, several fatal flaws.  For one, 53% was within "the range of 50-75%" that Tash told Albright he could likely expect to receive for his 2017 bonus.  In addition, because Albright did not "exceed expectations via exceptional performance," Albright did not even meet the criteria that he claims could have entitled him to a 75% bonus (moreover, SRP's bonuses are based on individual *and* firm performance, and SRP's 2017 performance was far below expectations).  And most importantly, SRP's bonuses at all times remained discretionary

and contingent. That is, at all times, SRP had the discretion to award Albright any bonus, or no bonus at all.

50. Nevertheless, in February 2018, Albright told Demchenko that he believed he was "entitled" to a 75% bonus. On February 27, 2018, Demchenko reminded Albright yet again that bonus decisions factor in both individual and firm performance. Demchenko also encouraged Albright to bring his concerns to Tash and Jeff Ziegler (then SRP's Chief Operating Officer). In that regard, Demchenko stated as follows:

> Given your retroactive increase late in 2017 and the 2017 bonus payout being within the range communicated to you, I don't know what more you'd like to discuss on the matter, but I did give Jeff and Carl a heads up that we chatted and told them, like I mentioned to you, that if you wanted to continue the conversation you would reach out to them directly.

51. Accordingly, Albright met with Ziegler on March 6, 2018, and with Tash on March 9, 2018, to discuss the amount of his 2017 bonus. During those meetings, SRP's senior management explained the bonus calculations to Albright, reminded him that all SRP bonuses are discretionary and contingent, and explained that Albright's 2017 bonus payment would not be increased above what he had earned – *i.e.*, $145,750, or 53% of his base salary.

52. SRP's senior management was unhappy that Albright was claiming entitlement to a 75% bonus, particularly because Albright had acknowledged to SRP the discretionary and contingent nature of SRP's bonuses just five months earlier (in October 2017), when SRP agreed to retroactively increase Albright's 2016 bonus and 2017 salary. SRP's management considered terminating Albright's employment based on his over-reaching behavior.

53. During their March 9, 2018 conversation, Albright represented to Tash (i) that he understood that he was not entitled to any additional 2017 bonus, (ii) that the dispute over his 2017 bonus was resolved, and (iii) that he would not take any further action regarding the dispute over

his 2017 bonus.  Based on Albright's representations and assurances in this conversation, SRP decided to not terminate Albright's employment.

54.      Albright, however, knew the representations he made during the March 9, 2018 meeting were false.  Unbeknownst to SRP, Albright continued to disagree as to whether SRP's bonuses are discretionary and contingent, and he began planning to sue SRP over his 2017 bonus. Albright – who had been a lawyer for more than 30 years – made these misrepresentations to SRP intending to induce SRP to (i) retroactively increase his pay in October 2017, and (ii) continue employing him while he positioned himself to later sue SRP.

55.      SRP reasonably relied on its belief in the truth of Albright's representations by agreeing to continue employing Albright.

56.      SRP would not have continued to employ Albright if it had known that (i) Albright understood SRP's bonuses not to be discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to award him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding his 2017 bonus.

**E.      Albright's Continued Employment and Eventual Termination**

57.      SRP continued employing Albright after March 9, 2018.

58.      During a follow-up meeting in April 2018, Albright again affirmed that any dispute over his 2017 bonus was fully resolved to his satisfaction.  Albright sent an e-mail message to Ziegler after this meeting, stating, "Jeff thanks for the meeting today. I am not sure I fully completed the circle. To be clear I'm committed to SRP I like what I'm doing here, the work is

challenging, I like the projects I have and probably will have and I like the people. Not sure I made that clear in our meeting."

59.     During his last year of employment, Albright's annual base salary was $280,500, making him the sixth-highest paid employee at SRP.

60.     On June 5, 2020, SRP terminated Albright's employment as part of a reduction in force.

61.     Between Albright's October 27, 2017 conversation with Tash and his June 5, 2020 termination, SRP paid Albright *more than one million dollars* – specifically, **$1,131,055.09** – in salary and bonuses.

62.     On August 3, 2020, Albright filed this lawsuit against SRP, alleging that he was entitled to a 75%, rather than 53%, bonus in 2017. The foundational theory of Albright's lawsuit is that SRP bonuses are neither discretionary nor contingent.

## COUNT I – PROMISSORY FRAUD

63.     SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

64.     Albright engaged in a scheme to defraud SRP. In furtherance of that scheme, Albright made a pattern of knowingly and materially false promises and representations to SRP.

65.     On March 17, 2015, Albright received a written offer of employment from SRP stating that he would be eligible to receive "discretionary incentive compensation bonus[es]" from SRP, on a contingent basis. The offer letter also stated that "Any bonus paid to you will be based on, among other things, individual and firm performance, and will be determined in the Company's sole discretion…."

66.     Albright signed this offer letter.  In doing so, Albright falsely (i) promised that he agreed all SRP bonuses would be discretionary and contingent, and (ii) implicitly promised that he would not sue SRP on the basis of any bonus.

67.     In fact, these promises were knowingly false.  At all times, Albright intended to take the position that SRP's bonuses are not contingent and not discretionary.  At all times, Albright intended to sue SRP if it did not provide him a large enough bonus.

68.     Albright's scheme continued in late October 2017.  At that time, Albright manufactured a "misunderstanding" about the nature of his compensation with SRP.  Albright (i) falsely claimed, in an October 27, 2017 discussion with Tash that he was entitled to a larger 2016 bonus and larger 2017 compensation than SRP originally provided to him.

69.     At all times, however, Albright understood that (i) his offer letter governed the terms of his compensation, (ii) all SRP bonuses are contingent and discretionary, and (iii) he was not entitled to a larger 2016 bonus or higher 2017 compensation.

70.     During that conversation, Albright knowingly and falsely represented to Tash that, based on their conversation, (i) Albright then understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are discretionary and contingent – applied to all bonuses (including his then-upcoming 2017 bonus), and (ii) Albright would not take the position that he was entitled to a bonus in excess of whatever bonus SRP decided to provide him.

71.     At all times, however, Albright intended to take the position that SRP's bonuses, including his then-upcoming 2017 bonus, were not contingent and are not discretionary.  At all times, Albright intended to sue SRP if it did not provide him a large enough bonus.

72.     Albright made these misrepresentations to SRP intending to induce SRP to (i) retroactively increase his pay in October 2017, and (ii) continue employing him while he

positioned himself to later sue SRP.  SRP reasonably relied on its belief in the truth of Albright's representations by (i) agreeing to retroactively increase Albright's pay by $80,129 in October 2017; and (ii) agreeing to continue employing Albright.

73.     Albright's scheme to defraud SRP continued in February and March 2018.

74.     In early February 2018, SRP informed Albright that his 2017 bonus would be 53% of his base salary.

75.     Despite having represented to SRP in 2015 and 2017 that he agreed all SRP bonuses were discretionary and contingent, Albright complained that he was entitled to receive a 75% bonus instead of a 53% bonus.

76.     Albright raised the issue with Demchenko, Ziegler, and Tash.  SRP refused to increase Albright's bonus and yet again reminded Albright that all SRP bonuses are discretionary and contingent.  SRP also considered terminating Albright's employment at that time.

77.     On March 9, 2018, Albright knowingly and falsely represented to Tash (i) that he understood that he was not entitled to any additional 2017 bonus, (ii) that the dispute over his 2017 bonus was resolved, and (iii) that he would not take any further action regarding the dispute over his 2017 bonus.

78.     In reasonable reliance on Albright's March 9, 2018 assurances and representations, SRP agreed to continue his employment with the Company.

79.     At all times, however, Albright knew his representations were false.  In fact, Albright (unbeknownst to SRP) continued to disagree that SRP's bonuses were discretionary and contingent, and he began planning to sue SRP over his 2017 bonus.

80.     Albright made these misrepresentations to SRP intending to induce SRP to continue employing him while he positioned himself to later sue SRP.  SRP reasonably relied on its belief

in the truth of Albright's representations by agreeing to continue employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,131,055.09) during this period.

81.    Albright's conduct is unconscionable.  Albright was an executive officer at SRP and, thus, owed SRP a duty of candor.  Albright had also been an attorney for more than 30 years. By repeatedly lying to SRP, he was able to improperly lull SRP into continuing to employ him and pay him hundreds of thousands of dollars, all while he positioned himself to sue SRP.

82.    SRP has been damaged by its reliance on Albright's scheme to defraud.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit.

83.    SRP would not have agreed to provide Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if anything, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

84.    Accordingly, SRP is entitled to a judgment against Albright for promissory fraud, and damages in the sum of (i) $78,321.19 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, (ii) $1,052,733.90 – the amount that SRP paid Albright in salary and bonuses between October 27, 2017, and June 5, 2020, and (iii) the amount

of attorneys' fees and costs SRP will have incurred by the end of this lawsuit. SRP is also entitled to treble punitive damages.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright") for promissory fraud, and that the Court enter an Order:

A. Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

B. Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

C. Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

D. Awarding to SRP any such other and further relief the Court deems just.

### COUNT II – PROMISSORY ESTOPPEL

85. SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

86. On October 27, 2017, Albright unambiguously promised SRP that (i) he understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are discretionary and contingent – applied to all bonuses, including his then-upcoming 2017 bonus, and (ii) he would not take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any.

87. In reliance on this promise, SRP (i) offered to retroactively increase Albright's 2016 bonus and 2017 base salary by a total of $78,321.19, and (ii) elected not to immediately terminate Albright's employment. Albright accepted this offer.

88.     On March 9, 2018, Albright unambiguously promised SRP that (i) he understood that he was not entitled to any additional 2017 bonus, (ii) the dispute over his 2017 bonus was resolved, and (iii) he would not take any further action regarding the dispute over his 2017 bonus.

89.     In reliance on this promise, SRP elected to not immediately terminate Albright's employment.

90.     SRP's reliance on Albright's promises was expected and foreseeable by Albright. Indeed, Albright would not have made the promises except to convince SRP (i) to retroactively increase his pay in October 2017, and (ii) to continue employing him.

91.     SRP has been damaged by its reliance on Albright's promises.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit.

92.     SRP would not have provided Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

93.     Accordingly, SRP is entitled to a judgment against Albright for promissory estoppel, and damages in the sum of (i) $80,129 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, (ii) $1,052,733.90 – the amount that SRP paid

Albright in salary and bonuses between October 27, 2017, and June 5, 2020, and (iii) the amount of attorneys' fees and costs SRP will have incurred by the end of this lawsuit. SRP is also entitled to treble punitive damages.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright"), and that the Court enter an Order:

    A. Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

    B. Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

    C. Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

    D. Awarding to SRP any such other and further relief the Court deems just.

### COUNT III – FRAUDULENT INDUCEMENT

94.    SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

95.    Plaintiff made several false representations of material fact to SRP.

96.    On October 27, 2017, Albright, in a conversation with Tash, represented (i) that he understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are discretionary and contingent – applied to all bonuses, including his then-upcoming 2017 bonus, and (ii) that he would not take the position that he was entitled to a bonus in excess of whatever bonus SRP decided to provide him.

97.    On March 9, 2018, Albright, in another conversation with Tash, represented (i) that he understood that he was not entitled to any additional 2017 bonus, (ii) that the dispute over his

2017 bonus was resolved, and (iii) that he would not take any further action regarding the dispute over his 2017 bonus.

98.     At all times, Albright knew these representations were false.  At all times, unbeknownst to SRP, Albright disagreed that SRP's bonuses were discretionary and contingent, and Albright planned to sue SRP over his 2017 bonus if SRP did not provide him with a bonus he determined to be sufficient.

99.     Albright made these misrepresentations to SRP intending to induce SRP to (i) retroactively increase his pay in October 2017, and (ii) continue employing him.

100.     SRP reasonably relied on its belief in the truth of Albright's representations by (i) agreeing to retroactively increase Albright's pay by $78,321.19 in October 2017; and (ii) agreeing to continue employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period.

101.     SRP has been damaged by its reliance on Albright's promises.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit

102.     SRP would not have provided Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed

the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

103.    Accordingly, SRP is entitled to a judgment against Albright for fraudulent inducement, and damages in the sum of (i) $78,321.19 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, (ii) $1,052,733.90 – the amount that SRP paid Albright in salary and bonuses between October 27, 2017, and June 5, 2020, and (iii) the amount of attorneys' fees and costs SRP will have incurred by the end of this lawsuit. SRP is also entitled to treble punitive damages.

104.    Alternatively, if these damages are not available to SRP, then SRP has no adequate remedy at law and is, thus, entitled to rescind the (i) October 2017 agreement to retroactively increase Albright's salary, and (ii) the agreement(s) to continue employing Albright after October 27, 2017, and after March 9, 2018. In such a case, SRP would be entitled to rescission even though SRP could not return to Albright the benefits it received from his employment at SRP (if any), as restoration has been rendered impossible by circumstances that are not SRP's fault and Albright obtained a benefit from the agreements SRP seeks to rescind.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright"), and that the Court enter an Order:

A. Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

B. Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

C. Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

D.  Awarding to SRP any such other and further relief the Court deems just.

IN THE ALTERNATIVE, if the Court determines any of the foregoing damages are not available to SRP, SRP would respectfully request that the Court:

E.  Enter a judgment in SRP's favor against Albright for fraudulent inducement;

F.  Rescind SRP's October 2017 agreement to retroactively increase Albright's pay;

G.  Rescind SRP's agreement(s) to employ and pay Albright from October 27, 2017 to June 5, 2020;

H.  Order restitution from Albright by requiring Albright to pay **$1,131,055.09** to SRP (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

I.  Award SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

J.  Award to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

K.  Award SRP any such other and further relief the Court deems just.

## COUNT IV – BREACH OF FIDUCIARY DUTY

105.    SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

106.    As SRP's Vice President of Development, Albright owed fiduciary duties to SRP, including the duty of good faith and the duty of loyalty (which encompasses the duty of candor).

107.    Albright breached his fiduciary duties by acting dishonestly and by failing to disclose all material information relevant to corporate decisions from which Albright obtained a personal benefit.

108.    On October 27, 2017, Albright falsely represented to SRP that (i) he understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are

discretionary and contingent – applied to all bonuses, including his then-upcoming 2017 bonus, and (ii) he would not take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him.

109.    On March 9, 2018, Albright falsely represented to SRP that (i) he understood that he was not entitled to any additional 2017 bonus, (ii) the dispute over his 2017 bonus was resolved, and (iii) he would not take any further action regarding the dispute over his 2017 bonus.

110.    Albright's misrepresentations were intentional, made in bad faith, and intended for his personal gain at SRP's expense.

111.    Albright obtained personal benefits from the corporate decisions SRP made in reliance on the foregoing misrepresentations.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; and (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him $1,052,733.90 during this period.

112.    Albright's breach of fiduciary duty proximately caused damages to SRP.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit.

113.    SRP would not have provided Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed

the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

114.    Accordingly, SRP is entitled to a judgment against Albright for breach of fiduciary duty, (i) requiring Albright to disgorge the October 2017 retroactive pay increase that he received from SRP, (ii) requiring Albright to disgorge all compensation that he received from SRP from October 27, 2017 through June 5, 2020, and (iii) awarding treble punitive damages to SRP.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright"), and that the Court enter an Order:

A.  Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

B.  Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

C.  Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

D.  Awarding to SRP any such other and further relief the Court deems just.

## COUNT V – BREACH OF CONTRACT

115.    SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

116.    On October 27, 2017, SRP offered to retroactively increase Albright's 2016 bonus and 2017 base salary by a total of $78,321.19, and offered not to immediately terminate Albright's employment, in exchange for the valuable consideration of Albright agreeing not to take the position that he is entitled to a bonus in excess of whatever SRP elected to provide him.   Albright

accepted this offer and received the aforementioned consideration from SRP. This was a valid and enforceable contract.

117.    On March 9, 2018, SRP offered to not immediately terminate Albright's employment in exchange for the valuable consideration of Albright agreeing that the dispute over his 2017 bonus dispute was resolved, and agreeing not to take any further action with respect to his 2017 bonus. Albright accepted this offer and received the aforementioned consideration from SRP. This is a valid and enforceable contract.

118.    SRP performed all obligations under each contract.

119.    SRP provided benefits to Albright under each contract.

120.    Albright breached these contracts, including the representations and warranties he provided as part of these contracts and his covenant not to sue, by filing his claims in this action, and by taking the position that he is entitled to a 2017 bonus in excess of the 53% bonus SRP awarded him.

121.    SRP has been harmed by Albright's breaches of contract. SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit.

122.    SRP would not have provided Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed

the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

123.    Accordingly, SRP is entitled to a judgment against Albright for breach of contract, and damages in the sum of (i) $78,321.19 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, (ii) $1,052,733.90 – the amount that SRP paid Albright in salary and bonuses between October 27, 2017, and June 5, 2020, and (iii) the amount of attorneys' fees and costs SRP will have incurred by the end of this lawsuit.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright"), and that the Court enter an Order:

A.    Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii) $1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

B.    Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

C.    Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

D.    Awarding to SRP any such other and further relief the Court deems just.

## COUNT VI – UNJUST ENRICHMENT

124.    SRP incorporates by reference Paragraphs 1 through 62 of its Counterclaim.

125.    On October 27, 2017, Albright represented to Tash (i) that he understood that the terms of his 2015 offer letter – including the provision stating that all SRP bonuses are discretionary and contingent – applied to all bonuses, including his then-upcoming 2017 bonus,

and (ii) that he would not take the position that he was entitled to a bonus in excess of whatever bonus SRP decided to provide him.

126.     On March 9, 2018, Albright represented to Tash (i) that he understood that he was not entitled to any additional 2017 bonus, (ii) that the dispute over his 2017 bonus was resolved, and (iii) that he would not take any further action regarding the dispute over his 2017 bonus.

127.     At all times, Albright knew these representations were false.  At all times, unbeknownst to SRP, Albright disagreed that SRP's bonuses were discretionary and contingent, and Albright planned to sue SRP over his 2017 bonus if SRP did not provide him with a bonus he determined to be sufficient.

128.     Albright made these misrepresentations to SRP intending to induce SRP to (i) retroactively increase his pay in October 2017, and (ii) continue employing him.

129.     Albright was an executive officer at SRP and, thus, owed SRP a duty of candor. Albright is also an attorney.

130.     SRP reasonably relied on its belief in the truth of Albright's representations by (i) agreeing to retroactively increase Albright's pay by $78,321.19 in October 2017; and (ii) agreeing to continue employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period.

131.     SRP has been damaged by its reliance on Albright's promises.  SRP (i) retroactively increased Albright's pay by $78,321.19 in October 2017; (ii) continued employing Albright between October 27, 2017, and June 5, 2020, paying him more than one million dollars ($1,052,733.90) in additional compensation during this period; and (iii) is now forced to defend against Albright's frivolous claims in this lawsuit.

132.    SRP would not have provided Albright with a retroactive pay increase and would not have continued to employ Albright if it had known that (i) Albright thought SRP's bonuses were anything other than discretionary and contingent, (ii) Albright was planning to take the position that he was entitled to a bonus in excess of whatever bonus SRP elected to provide him – if any, (iii) Albright believed he was entitled to an additional 2017 bonus, (iv) Albright believed the dispute over his 2017 bonus was not resolved, or (v) Albright planned to take further action regarding the dispute over his 2017 bonus.

133.    Albright has been unjustly enriched, to SRP's detriment, by (i) $78,321.19 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, and (ii) $1,052,733.90 – the amount that SRP paid Albright in salary and bonuses between October 27, 2017, and June 5, 2020.

134.    Albright's retention of these benefits violates the fundamental principles of justice, equity, and good conscience.

135.    Accordingly, to the extent there is no remedy provided by law, SRP is entitled a judgment against Albright for unjust enrichment, and disgorgement of the benefits Albright improperly retained (i) $78,321.19 – the amount by which SRP agreed to retroactively increase Albright's compensation in October 2017, and (ii) $1,052,733.90 – the amount that SRP paid Albright in salary and bonuses between October 27, 2017, and June 5, 2020.

WHEREFORE, for the reasons set forth above, Counter-Plaintiff Starwood Retail Partners, LLC ("SRP") respectfully requests that judgment be entered in favor of SRP and against Counter-Defendant John A. Albright ("Albright"), and that the Court enter an Order:

> A.  Awarding to SRP compensatory damages in the amount of **$1,131,055.09** (consisting of the sum of (i) $78,321.19 – the amount by which Albright fraudulent induced SRP to retroactively increase his compensation in October 2017, and (ii)

$1,052,733.90 – the amount that Albright fraudulently induced SRP to pay him in compensation during the time period from October 27, 2017, to June 5, 2020);

B.   Awarding to SRP its actual costs and attorneys' fees incurred in connection with this proceeding;

C.   Awarding to SRP punitive damages in the amount of **$3,500,000**, or such other and additional amount sufficient to deter such conduct by Albright in the future; and

D.   Awarding to SRP any such other and further relief the Court deems just

## JURY DEMAND

SRP hereby demands a jury trial on all matters alleged in its Counterclaim.

Dated: October 2, 2020

Respectfully submitted,

**STARWOOD RETAIL PARTNERS, LLC, Defendant/Counter-Plaintiff**

By: _/s/ Christopher S. Griesmeyer_
     One of Its Attorneys

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, I electronically filed the foregoing ***Starwood Retail Partners, LLC's Answer, Affirmative Defenses and Counterclaim***, with the Clerk of the Court via the CM/ECF System, which will send notification and a copy of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including:

Andrew J. Albright
SWANSON MARTIN & BELL, LLP
330 North Wabash Ave., Suite 3300
Chicago, Illinois 60611
aalbright@smbtrials.com

       */s/   Christopher S. Griesmeyer*
       Christopher S. Griesmeyer
       GREIMAN, ROME & GRIESMEYER, LLC
       205 West Randolph Street, Suite 2300
       Chicago, Illinois  60606
       (312) 428-2750
       cgriesmeyer@grglegal.com

**EXHIBIT A**

**STARWOOD RETAIL PARTNERS, LLC'S COUNTERCLAIM**



STARWOOD
RETAIL PARTNERS

March 17, 2015

John A. Albright
5775 Coopers Hawk Dr.
Carmel, IN 46033

Dear John,

On behalf of Starwood Retail Partners (the "Company" or "SRP"), I am delighted to extend to you an offer to join us in SRP's Chicago Office. This offer letter will serve as the terms and conditions upon which you will join the Company.

The start date of your employment at SRP will be determined upon acceptance of the offer. Your title will be "VP of Development," reporting to Rob Hense. This position is a full-time, salaried, exempt position. You will receive an annual base salary of $250,000.00 less deductions for applicable tax and other withholdings, paid on a bi-weekly basis.

Starwood will provide a one-time sign on bonus of $65,000.00 less taxes to assist with your relocation expenses to be paid within approximately 30 days of your start date. You will be required to return the entire sign on should you leave the Company for any reason whatsoever prior to your one-year anniversary with the Company.

In addition, you will be eligible to receive a discretionary incentive compensation bonus ("bonus") with a target of up to 50% of your annualized base compensation. Any bonus paid to you will be based on, among other things, individual and firm performance, and will be determined in the Company's sole discretion based on the Company's then-current eligibility criteria. Bonuses are considered "earned" on the date that they are paid (the payment date for any bonus typically occurs in the first quarter following the year for which the bonus would be awarded), and you must be a full-time employee in good standing with the Company on the date any bonus is paid. At the Company's discretion, a pro-rated bonus may be offered following an employee's first year of employment.

Your first eligibility for bonus will be for the 2015 year with a guaranteed minimum bonus of 65%, payable in the first quarter of 2016.



Your incentive compensation bonus will be paid subject to the following terms:

You must achieve 80% of the budgeted leasing program in order to be eligible to receive a payout. The annual payout schedule is as follows:

### % of Budgeted Development &

| Leasing Program Attained | Payout as % of Base Salary |
|---|---|
| 80% | 25% |
| 100% | 50% |
| 125% | 75% |

*Maximum payout is 75% of base salary.*

As a full-time employee, you will be entitled to the standard employment benefits package set forth in the SRP Employee Handbook as amended from time-to-time, with health benefits effective the first of the month after your effective hire date. You will be eligible to enroll in the Company's 401(k) plan at the beginning of the calendar quarter following your completion of three calendar months of service. In addition, you will be entitled to twenty (20) business days of paid time off ("PTO") annually, pro-rated during your first calendar year of employment. These plans and benefits may change at any time, for any reason, by SRP.

Please understand that the foregoing is a description of the compensation and benefits which you will receive, and is not a contract of employment. Your employment with the Company will be "at will," which means that the employment relationship may be terminated by either you or SRP, at any time, for any reason, with or without notice. As an employee of SRP, you will be subject to all rules, policies and procedures that are or may become applicable to Company employees.

This offer of employment is also contingent upon: (1) your satisfactory completion of a thorough background investigation; (2) your providing appropriate documentation to SRP sufficient to verify your identity and employment eligibility; and (3) your execution of a Confidentiality Agreement that SRP will provide to you.

Your signature below will confirm that the performance of your obligations as an employee of SRP will not conflict with or violate any covenant, agreement, court order, obligation or other restriction to which you are a party or are subject. You also confirm that you will not disclose to anyone at the Company any confidential information of a prior employer.

1 East Wacker Drive
Suite 3600
Chicago, Illinois 60601



This letter fully describes SRP's offer of employment to you. Any other discussions that you may have had with the Company are not part of this offer unless they are described in this letter. Please indicate your agreement to the terms as set forth in this letter by signing this letter below and e-mailing it back to me.

I am very excited to have you join the SRP team. The success of SRP will be based on a combination of intelligent acquisitions and operating our portfolio in a "best of class" manner. Your role is critical to our performance.

Please do not hesitate to contact me should you have any questions regarding this offer. We look forward to hearing from you soon.

Very truly yours,

Megan Van Pelt
VP of Human Resources

I have read and hereby accept this offer of employment as outlined above.

John A. Albright

1 East Wacker Drive
Suite 3600
Chicago, Illinois 60601

**E**XHIBIT **B**

**S**TARWOOD **R**ETAIL **P**ARTNERS**, LLC'**S **C**OUNTERCLAIM

**From:** John Albright
**Sent:** Wednesday, November 1, 2017 12:12 PM
**To:** Angie Demchenko
**Cc:** Carl Tash
**Subject:** RE: Update

Thanks for the note, the below is what we discussed. Thanks for the follow-up. John

---

**From:** Angie Demchenko
**Sent:** Wednesday, November 1, 2017 12:04 PM
**To:** John Albright <jalbright@starwoodretail.com>
**Cc:** Carl Tash <ctash@Starwood.com>; Angie Demchenko <ademchenko@starwoodretail.com>
**Subject:** Update

Hi John, I wanted to follow up with an email to confirm some details on compensation, based on your discussion with Carl. Please let me know if you have any questions or if you'd like to connect to discuss.

Thank you,
Angie

- Base salary for 2017, retroactive to 1/1/2017, will be $275,000 – you will see the new salary rate reflected within the 80 hours on your 11/10/17 pay. Additionally, you will see a lump sum payment of $8,636.19, which totals the retroactive difference in salary from 1/1 through 10/27 (the end date of the most recent pay period)
- 2016 Bonus: you will have your bonus increased to $196,875
  - You will receive the difference of $69,685 (pre-tax) on 11/10
- 2017 bonus will be the range of 50-75% of your base salary for the year; 50% will be for "meeting expectations" and 75% will be for "exceeding expectations via exceptional performance"




**Angie Demchenko**
Vice President, Head of Human Resources
Starwood Retail Partners
1 E. Wacker Drive #3600 | Chicago, IL 60601
Office: 312.265.6986 | Cell: 312.953.8212