UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN A. ALBRIGHT, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> STARWOOD RETAIL PARTNERS, LLC, <br><br> Defendant/Counter-Claimant. | No. 20 CV 4552 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

John Albright is a former executive at Starwood Retail Partners, LLC. He thinks that Starwood shorted him on his 2017 bonus, so he initiated this suit. Starwood, for its part, claims that Albright repeatedly told the company that he understood that employee bonuses were within Starwood's sole discretion and that he would not dispute the size of his bonus. According to Starwood, these representations were knowingly false—Albright always planned to sue for the maximum bonus. If it had known as much, Starwood says that it would not have retroactively increased Albright's 2016 and 2017 compensation or continued to employ him from October 2017 to June 2020. Starwood brought several counterclaims against Albright under Illinois law for promissory fraud, fraudulent inducement, promissory estoppel, breach of contract, unjust enrichment, and breach of fiduciary duty. Albright moves to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted for all counts except for the breach of contract claim.

## I. Legal Standards

A complaint (or counterclaim) must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts sufficient "to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard applies to counterclaims. *United Central Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). The court accepts the counterclaim's factual allegations as true and draws all reasonable inferences in the counter-claimant's favor,[1] but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. Documents attached to the counterclaim may be considered. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Counterclaims alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b). They must describe the "who, what, when, where, and how" of the fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

---

[1] Starwood is correct that Albright's attempt to put his own spin on the facts is improper. Albright argues, for example, that a November 2017 email—which is attached to the counterclaim—is an integrated contract that supersedes and contradicts Starwood's allegations. But the email does not establish a fully integrated contract on its face. So even if Albright's interpretation is reasonable, it is also reasonable to infer that the email was not an integrated agreement. At this stage, the latter inference prevails, and in turn, the parol evidence rule does not kick in. *See International Marketing, Ltd. v. Archer-Daniels-Midland Company, Inc.*, 192 F.3d 724, 729–730 (7th Cir. 1999) (fact-finding is not appropriate at Rule 12(b)(6) stage, but reliance on the parol evidence rule is permitted when the "contract[ ] evidence[s] integration on [its] face").

**II.     Facts**

Starwood Retail Partners, LLC is a commercial real estate company that specializes in retail shopping centers. [13] at 32, ¶ 14.[2] John Albright was a Vice President of Development at Starwood from April 2015 until June 2020. *Id*. at 34, 41, ¶¶ 21, 60.

Just before he began working at Starwood, Albright signed an offer letter that described Starwood's bonus structure. *Id*. at 33–34, ¶¶ 19–25. The letter stated that Albright would be eligible to receive a discretionary incentive bonus, which would be "based on, among other things, individual and firm performance, and ... determined in the Company's sole discretion." *Id*. at 33, ¶ 20; *see also id.* at 60. By signing this letter, Starwood claims, Albright agreed that all bonuses would be discretionary and "implicitly represented that he would not sue [Starwood] on the basis of any allegedly unpaid bonus." *Id*. at 34, ¶ 22. From this moment, however, Albright planned to argue that bonuses were not discretionary and to sue Starwood if it did not provide him with the maximum possible annual bonus. *Id.* ¶ 23. If Starwood had known of Albright's plan, it would not have employed him. *Id.* ¶ 24.

A few years later, in late October 2017, Albright spoke with Starwood's Chief Strategy Officer, Carl Tash, and argued that he was entitled to greater compensation for 2016 and 2017. *Id*. at 35, ¶¶ 27–28. During their conversation, Tash reminded

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from Starwood's counterclaim, [13], and its response in opposition to the motion to dismiss, [24]. Page numbers have been included to differentiate between the paragraphs in the answer to the complaint and the paragraphs in the counterclaim.

3

Albright of his offer letter and that bonuses were discretionary. *Id.* ¶ 30. Albright, in turn, acknowledged that the terms of his 2015 offer letter—including the provision stating that Starwood bonuses were discretionary and contingent—applied to all bonuses, including his 2017 bonus; he also "represented that he would never again take the position" that Starwood bonuses "are not discretionary and contingent, or … that he is entitled to any bonus whatsoever." *Id.* at 35–36, ¶ 32. The company subsequently agreed to retroactively increase his 2016 compensation and his 2017 base salary. *Id.* at 35, ¶ 31. Starwood claims that Albright's representations were again knowingly false, and that it would not have increased his compensation or continued employing him if it had known that (1) he did not actually agree that Starwood's bonuses were discretionary, or (2) that he intended to sue Starwood if it did not award him a large enough bonus. *Id.* at 36, ¶ 35.

Albright received an email from human resources in early November 2017 confirming the retroactive increase to his 2016 bonus and 2017 base salary, together totaling $78,321.19. *Id.* at 64. The email stated that Albright's 2017 bonus would "be [in] the range of 50-75% of your base salary for the year; 50% will be for 'meeting expectations' and 75% will be for 'exceeding expectations via exceptional performance.'" *Id.*

Starwood awarded Albright a 2017 bonus of $145,750, equal to 53 percent of his base salary. *Id.* at 38, ¶ 44. But Albright claimed that he was entitled a bonus of $206,250 (the full 75 percent of his base salary), based on the November email and his job performance. *Id.* ¶¶ 46–48. In early March 2018, Albright met with Starwood's

4

Chief Operating Officer Jeff Ziegler, and then with Tash, to discuss his 2017 bonus. *Id*. at 39, ¶ 51. Starwood's senior management was not happy that Albright was seeking to increase his bonus, especially after just resolving the October 2017 dispute. *Id*. ¶ 52; [24] at 11. During his conversation with Tash, Albright represented that he understood that he was not entitled to any additional 2017 bonus, the dispute was resolved, and he would not take further action to dispute his 2017 bonus. [13] at 39–40, ¶ 53. Albright reiterated that the matter was resolved during a follow-up meeting the next month. *Id*. at 40, ¶ 58. Starwood claims that Albright was once again misrepresenting his understanding of Starwood's bonus system, his belief that the matter was resolved, and his intention not to pursue the matter further. *Id*. ¶¶ 54–56. Starwood relied on these misrepresentations; without them, it would not have increased Albright's compensation or continued to employ him. *Id*. Albright continued to work for Starwood until June 2020, when he was terminated as part of a reduction in force. *Id*. at 41, ¶ 60.

Starwood claims that Albright's representations in his signed 2015 offer letter, in October 2017, and in March 2018 were knowingly false. Starwood brings counterclaims for promissory fraud (Count I), promissory estoppel (Count II), fraudulent inducement (Count III), breach of fiduciary duty (Count IV), breach of contract (Count V), and unjust enrichment (Count VI).[3]

---

[3] Starwood's attempt to draw an artificial line between claims and counts—to suggest that its counterclaim is not subject to partial dismissals—is not persuasive. While a plaintiff need not separate a complaint into counts, *see* Fed. R. Civ. P. 10(b), doing so is helpful to give notice of the legal theories at issue. Here, Starwood staked out specific legal theories in six separate counts, each representing its own distinct legal claim for relief. If its pleading does not state

**III.    Analysis**

    **A.    Promissory Fraud and Fraudulent Inducement**

Promissory fraud is a "disfavored cause of action" because "fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (applying Illinois law).[4] "[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 168 (1989). Courts recognize promissory fraud only if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Id.* (quoting *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334 (1977)); *see also BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011). A scheme to defraud requires conduct that is "particularly egregious" or "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (applying Illinois

---

a claim under a specific theory, then dismissal of specific counts as a matter of law is appropriate.

[4] This court has jurisdiction over the counterclaim under 28 U.S.C. § 1332. Albright is a citizen of Indiana and the amount in controversy exceeds $75,000. [1] ¶¶ 1, 6. "For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Diversity exists here because Starwood is a Delaware LLC whose sole member is SCG-SRP Partners, LLC, whose sole member is Starwood Capital Group Holdings GP, LLC, whose sole member is BSS SCG GP Holdings, LLC, whose sole member, Barry Sternlicht, a citizen and resident of Florida. [1] ¶ 2. There is no dispute over which state's law governs, so Illinois law applies. *Kolchinsky v. Western Dairy Transport, LLC*, 949 F.3d 1010, 1013 n.2 (7th Cir. 2020) ("When there is no dispute over which state's law applies, the court will apply the substantive law of the state in which the federal court sits.").

6

law). The burden at the pleading stage is "deliberately high" and a plaintiff "must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device." *Bower*, 978 F.2d at 1012 (internal quotation marks and citation omitted).

Albright's scheme, according to Starwood, was to obtain larger compensation and continued employment through false representations—in the 2015 offer letter, in October 2017, and again in March 2018—that he understood bonuses were discretionary and that he wouldn't take future action to dispute his bonus award. [13] at 41–45, ¶¶ 64–84. Despite these statements, Albright "positioned himself to later sue" Starwood. *Id*. at 43, ¶ 80. Starwood relied on these representations to retroactively increase Albright's 2016 and 2017 compensation, and to continue employing him from October 2017 to June 2020. *Id*. Starwood argues that Albright's "false promises and representations concerning [Starwood's] bonus structure and his intentions to sue" constitute a "repeated pattern of knowingly and materially false promises and representations to [Starwood]." [24] at 21.

Starwood has not alleged that Albright made false promises of future conduct amounting to a scheme to defraud. All Starwood has alleged is that Albright misrepresented on several occasions that (1) he understood that bonuses were discretionary and (2) he intended not to dispute his bonus further. The statements regarding Albright's understanding of the bonus policy cannot form the basis of a promissory fraud claim because they are expressions of present understanding, not statements of intent regarding future conduct. The 2015 offer letter also did not

7

contain a promise not to sue or dispute bonuses.[5] What's left is Albright's alleged promise that he would not dispute his bonus, made on two occasions.

That's not a scheme to defraud. An employee's representation that he would not seek higher pay while actually intending to do so is not a "deceit [that] is particularly egregious." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 865 (7th Cir. 2013). And while Albright made the alleged representation on two occasions, that doesn't create "a pattern of fraudulent statements." *BPI Energy*, 664 F.3d at 136 (citing *HPI Health Care*, 131 Ill.2d at 165); *LeDonne v. Axa Equitable Life Insurance Co.*, 411 F.Supp.2d 957, 962 (N.D. Ill. 2006) (holding that an oral promise made on two occasions "simply does not rise to the level of a series of misrepresentations, ... or the 'elaborate artifice of fraud' required to sustain a promissory fraud action under Illinois law"). Starwood provides no allegations, for example, of a larger plot or repeated statements made over time to multiple victims. *See HPI Health Care*, 131 Ill.2d at 165, 168–70 (alleged scheme consisted of "11 'knowingly false promises' which 'each' of the four defendants allegedly made as part of their alleged scheme"); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (allegations that bank made and broke promises of permanent modifications to plaintiff and to thousands of other potential class members showed

---

[5] Starwood contends that by signing the 2015 offer letter Albright "implicitly promised that he would not sue [Starwood] on the basis of any bonus." [13] at 42, ¶ 66. But "Illinois does not recognize a cause of action for fraud based on misrepresentations regarding implied obligations." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1446 (7th Cir. 1992).

8

"a widespread pattern of deception [that] could reasonably be considered a scheme under Illinois law and thus actionable as promissory fraud").

Starwood argues that it need only show Albright made an intentional misrepresentation to establish a scheme to defraud. [24] at 22 (citing *Gagnon v. Schickel*, 2012 IL App (1st) 120645 ¶ 34). But promissory fraud is actionable only "if the misrepresentation is embedded in a larger pattern of deception or the deceit is particularly egregious." *Asia Pulp*, 707 F.3d at 865. The Illinois Supreme Court has not watered down the rule to the extent suggested by *Gagnon*. The scheme requirement is still a limiting principle and a single broken promise of future conduct, made without intent to perform, is not a scheme to defraud. Albright's representations that he would not dispute his bonus were "made without a present intention to perform, [and therefore] do not generally constitute fraud." *HPI Health Care*, 131 Ill.2d at 168. Illinois law does not recognize this sort of "garden-variety promissory fraud." *Asia Pulp*, 707 F.3d at 865.

The fraudulent-inducement claim fares no better. Fraudulent inducement is a form of common-law fraud. *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 17 (1995). To prove fraudulent inducement, Starwood must show: (1) a false statement of material fact; (2) Albright's knowledge or belief that the statement was false; (3) an intention to induce Starwood to act; (4) reasonable reliance upon the truth of the statement by Starwood; and (5) damages. *See Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 866 (7th Cir. 2020) (applying Illinois law). Starwood argues that Albright's

misrepresentations in October 2017 and March 2018 induced it to retroactively increase his 2016 and 2017 pay, and to employ him until June 2020.

But Albright's representations, even if false, were not statements of material fact that induced reasonable reliance. Albright's alleged misrepresentations that he would not dispute the size of his bonus were promises relating to future conduct, which are not actionable for fraudulent inducement. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 41 ("[A]ssurances as to future events are generally not considered misrepresentations of fact."); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F.Supp.2d 759, 768 (N.D. Ill. 2011) (applying Illinois law) ("[T]he alleged misrepresentation must be one of present or preexisting fact.").

Starwood's reliance on Albright's statements regarding his understanding of the bonus policy was not reasonable. *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, ¶ 114 (reliance must be reasonable). Starwood's decision to employ its discretionary bonus policy did not depend on Albright's understanding of it or his concession that he no longer disputed the bonus. While Starwood alleges that it paid and continued to employ Albright in reliance on this representation, its reliance was based on the implicit promise not to challenge the bonus, not Albright's mere understanding of how bonuses worked. As discussed, the promise not to dispute the bonus cannot be the basis of a fraudulent-inducement claim. Starwood had always understood its own bonus policy, and the counterclaim has not plausibly alleged that Starwood reasonably relied on Albright's representation of his own understanding. *Newman v. Metropolitan Life Insurance*

10

*Company*, 885 F.3d 992, 1003 (7th Cir. 2018) (counterclaim must "provide enough ... to make a plausible case for reasonable reliance).

Counts I and III are dismissed.

### B. Promissory Estoppel and Breach of Contract

A plaintiff has a claim for promissory estoppel if "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to its detriment." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 95. To state a claim for breach of contract in Illinois, a party must allege four elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks and citation omitted).

Starwood bases its promissory estoppel and breach of contract claims on the October 2017 and March 2018 conversations between Albright and Tash. *See* [13] at 45–47, ¶¶ 86–93; *id.* at 52–54, ¶¶ 116–123. Starwood claims that in October 2017, Albright promised the company (via Tash) that (1) he understood that all bonuses were discretionary and (2) "he would not take the position that he was entitled to a greater bonus than whatever [Starwood] elected to pay him." *Id.* at 45, ¶ 86. Starwood claims that, in reliance on these promises, it decided to retroactively increase Albright's 2016 bonus and 2017 salary, and to continue employing him. *Id.* ¶ 87. Albright made similar promises regarding his understanding of the bonus structure

11

in March 2018, but also promised that the dispute over his 2017 bonus was resolved and that he would not take any further action regarding his 2017 bonus. *Id.* at 46 ¶ 88. Starwood says, in reliance on these promises, it again decided not to terminate Albright. *Id.* ¶ 89. The breach of contract claim reframes the same conversations in contract terms. Starwood offered to continue employing Albright and to increase his compensation, and in exchange, Albright agreed not to take the position that he is entitled to a bonus in excess of whatever Starwood elected to provide him. *Id.* at 52–53, ¶¶ 116–118. Starwood argues that Albright breached "his covenant not to sue" when he filed this suit. *Id.* at 53, ¶ 120.

Under the Illinois statute of frauds, an oral promise that is not to be performed within one year is unenforceable. *See* 740 ILCS 80/1; *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 492 (1997) (holding that the statute of frauds applies in cases of promissory estoppel). To be sure, the statute of frauds is an affirmative defense that the counterclaim need not anticipate. *See* Fed. R. Civ. P. 8(c)(1); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But while a court should refrain from granting a Rule 12(b)(6) motion based on affirmative defenses, it need not delay the matter when a counterclaim's allegations "set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Brownmark Films*, 682 F.3d at 690. Put differently, a counter-claimant "must affirmatively plead himself out of court." *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014).

Starwood has done so here with respect to the promissory estoppel claims, which are based on only oral representations between Albright and Tash in October 2017 and March 2018. *See* [13] at 45–47, ¶¶ 85–93; *id.* at 52–54, ¶¶ 115–123. Starwood concedes that Albright's alleged representations or agreements were made in conversation. *See* [24] at 10, 12, 14, 17 (referring to oral contract and conversations as the basis of its claim). Starwood further admits that it mistakenly believed that "it was not necessary to obtain a written waiver or release" from Albright. *Id.* at 25. Starwood's mistaken reliance on oral promises is no excuse to the statute of frauds. *McInerney*, 176 Ill.2d at 493 ("[S]ophisticated" plaintiff "arguably should have realized that [defendant's] oral promise was unenforceable under the statute of frauds and that his reliance on that promise was misplaced.").

The contract claim is another matter. Albright devotes little argument to the substance of Starwood's breach of contract claim, instead making the issue about the statute of frauds. But Starwood argues that the statute of frauds does not apply because it fully performed under the contract. [24] at 16–17. "Illinois courts have uniformly followed the rule ... that when one party to a contract completes his performance, the one-year provision of the statute does not prevent enforcement of the promises of the other party." *American College of Surgeons v. Lumbermens Mutual Casualty Co.*, 142 Ill.App.3d 680, 700 (1986). The doctrine of full performance is unique to oral contracts (and inapplicable to promissory estoppel) and takes an agreement out of statute of frauds when a party fully upheld its end of the bargain. *Anderson v. Kohler*, 397 Ill.App.3d 773, 785 (2009) ("When one party fully performs

13

his part of the alleged oral contract, however, the courts recognize that this very performance strongly indicates the existence of a contract.").

Here, Starwood alleged that it "fully performed under the oral contracts at issue." [24] at 17 (citing [13] at 53, ¶¶ 118–121). It alleges that it increased Albright's compensation retroactively and continued to employ him—its end of the bargain—in exchange for his agreement not to challenge his bonus. [13] at 52–53, ¶¶ 116–121. Albright argues that continuing to employ someone "cannot be performance sufficient to excuse the existence of a required, signed writing." [27] at 17. But he cites no authority for this proposition. Albright then raises arguments about the equitable doctrine of partial performance, which is distinct from the full performance doctrine. *American College of Surgeons*, 142 Ill. App.3d at 700 ("The full performance doctrine is entirely separate from the partial performance doctrine."). Albright does not show, in other words, that the full performance exception does not apply. Because Starwood has alleged that it fully performed, at this point, it has not "affirmatively plead[ed] [it]self out of court" under the statute of frauds. *Chicago Building Design*, 770 F.3d at 614. Albright has raised no substantive argument for the dismissal of the breach of contract claim, so it survives.

Counts II is dismissed, but Count V is not.

### C. Unjust Enrichment

Starwood argues that if Albright's statute-of-frauds argument prevails, then its unjust enrichment claim is automatically valid. [24] at 14–15. That's not right. While "[c]laims for breach of contract and unjust enrichment are mutually exclusive,"

14

the absence of one does not guarantee the validity of the other. *See Blanchard & Associates v. Lupin Pharmaceuticals, Inc.*, 900 F.3d 917, 921 (7th Cir. 2018).

"Unjust enrichment is an equitable remedy," available when a "defendant has unjustly retained a benefit to the plaintiff's detriment." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (quoting *A.P. Properties, Inc. v. Rattner*, 2011 IL App (2d) 110061 (2011)). To state a claim for unjust enrichment in Illinois, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care*, 131 Ill.2d at 160).

Albright was not unjustly enriched. Starwood seeks to disgorge Albright of the increases to his 2016 and 2017 compensation, and of all his earnings between October 2017 and June 2020. [13] at 54–57, ¶¶ 125–135. But Starwood paid Albright a salary and bonus for his services as Vice President at the company. Even if Albright misrepresented his understanding of the bonus structure and his intention not to sue, his retention of his earned compensation from 2017 until his termination hardly "violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services*, 131 Ill.2d at 160. Indeed, Starwood pleads that its bonus decisions were entirely discretionary and it chose the amount of bonus to award for Albright's performance. Even if part of its calculation was based on Albright's representation that he'd drop his arguments for more money, Starwood doesn't allege anything that makes Albright's retention of the bonus Starwood chose to award in its

15

discretion a violation of fundamental principles of justice. Starwood gave Albright a bonus based on his performance and paid his salary for his work—that is what Albright was entitled to retain.

Count VI is dismissed.

### D. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a party must allege "that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the [party] complains." *Neade v. Portes*, 193 Ill.2d 433, 444 (2000). Employees, officers, and directors owe a duty of loyalty to their employer and cannot, for example, "act inconsistently with his agency or trust and cannot solicit his employer's customers for himself." *Lawlor v. North American Corporation of Illinois*, 2012 IL 112530, ¶ 69

Starwood has failed to allege that Albright breached a fiduciary duty. It seems to argue that, because Albright planned to (and subsequently did) sue for the maximum 2017 bonus despite representing that he wouldn't, he breached his fiduciary duty to the company. [24] at 25. Starwood cites no authority to support its claim that Albright's actions breached a fiduciary duty. He did not, for example, interfere with a corporate opportunity or fail to disclose a conflict of interest that harmed the company. Instead, he sought only to increase his own compensation, through internal discussions with other executives and human resources.

Count IV is dismissed.

### E. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), courts should freely give leave to amend. An initial dismissal for failure to state a claim should be without prejudice, and leave to amend should be freely given unless it is certain from the face of the pleading that any amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015). It is not certain from the face of the counterclaim that amendment would be futile here. Dismissal is without prejudice, and Starwood has leave to amend its counterclaim.

## IV. Conclusion

Albright's motion to dismiss Starwood's counterclaims, [20], is granted in part, denied in part. All counterclaims except for breach of contract are dismissed without prejudice. Albright shall file an answer to the breach of contract counterclaim by March 2, 2021. The deadline to seek amendment of any pleadings remains April 13, 2021. If no amended counterclaims are filed, the dismissal here will convert to a dismissal with prejudice. The parties shall file a joint status report with an update on the progress of discovery on March 2, 2021.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: February 9, 2021